**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Armando Luis SANTIESTEBAN,
Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Crencio VELAZQUEZ a/k/a Crescencio
Velazquez, Defendant-Appellant.**

**Nos. 86–5128, 86–5129.**

United States Court of Appeals,
Fourth Circuit.

Argued May 8, 1987.

Decided Aug. 11, 1987.

Harold Johnson Bender, Keith McLendon Stroud, Sr., Charlotte, N.C., for defendants-appellants.

Debra Jo Stuart, Asst. U.S. Atty., Charlotte, N.C., (Charles R. Brewer, U.S. Atty., Asheville, N.C., on brief), for plaintiff-appellee.

Before WIDENER, WILKINSON and WILKINS, Circuit Judges.

WILKINS, Circuit Judge:

Armando Santiesteban and Crencio Velazquez appeal their convictions and sentences for various firearms violations arising from their possession and interstate transportation of two handguns and a hand grenade. We affirm.

## I.

At approximately 9:00 p.m. on November 12, 1985, Defendants and Leonardo Fernandez arrived at Douglas International Airport in Charlotte, North Carolina on a nonstop commercial flight from Miami, Florida. Shortly after disembarking, they were approached by two local law enforcement officers, who identified themselves and displayed their credentials. After being advised that they were not under arrest, they consented to speak with the officers and produced identification and a ticket folder which contained their tickets and one baggage claim check.

When the officer explained that they were conducting a narcotics investigation, the three men denied possession of any drugs and consented to a search of their persons and baggage. No drugs were found, but a hand grenade and two loaded handguns, a nine millimeter Baretta and a .38 Colt revolver, were found in the checked bag.

The three were arrested and taken to an airport office where they were advised of their rights. They indicated their understanding of those rights and refused to discuss the weapons. However, while the officers were in an adjoining room preparing necessary paperwork, Velazquez entered the room and spontaneously declared—"That is my bag. That is my Baretta, I bought it in Miami, Florida."

## II.

In December 1985 Velazquez and Santiesteban were indicted under the National Firearms Act for possession and interstate transportation of an unregistered firearm

(the hand grenade), 26 U.S.C.A. §§ 5861(d), (j) (West 1980). They were also charged under the Federal Aviation Act of 1965, as amended, with willfully causing loaded firearms and an explosive device to be placed aboard an aircraft intended for operation in air transportation, with reckless disregard for the safety of human life, 49 U.S.C.A. §§ 1472(*l*)(1)(B), (C) and § 1472(*l*)(2) (West Supp.1987).

At the time of the arrest, Velazquez was under indictment in Florida for possession of cocaine which is punishable by imprisonment for a term exceeding one year under Florida state law. Based on this fact, Velazquez and Santiesteban were later indicted under the Omnibus Crime Control Act with interstate transportation of a firearm (the Baretta pistol) by a person under indictment for a crime punishable by imprisonment for a term exceeding one year, 18 U.S.C.A. § 922(g) (West 1976) and 18 U.S.C.A. § 2 (West 1969). They were also indicted under 18 U.S.C.A. § 371 (West 1966) for conspiracy to transport and receive the Baretta pistol in violation of Sections 922(g) and (h).[1]

At a consolidated trial, Velazquez was convicted on all counts and received a total sentence of 25 years. Santiesteban was convicted on all counts, except aiding and abetting in the transportation of the Baretta in violation of Section 922(g), for which he also received a total sentence of 25 years.

### III.

■ The National Firearms Act provides that it is unlawful to possess an unregistered firearm, 26 U.S.C.A. § 5861(d) (West 1980), or to transport any unregistered firearm in interstate commerce, 26 U.S.C.A. § 5861(j) (West 1980). Violation of any provision of Section 5861 carries a maximum prison term of ten years. 26 U.S.C.A. § 5871 (West Supp.1987). Both Velazquez and Santiesteban received consecutive sen-

tences of five years under Section 5861(d) and ten years under Section 5861(j). They challenge their sentences, asserting that the imposition of consecutive sentences was improper. We hold that consecutive sentences were permissible under the facts of this case.

■ In an effort to control the availability of firearms, Congress has enacted numerous statutes which create separate, substantive offenses, some of which overlap. Generally, a person may be prosecuted and punished under different statutory provisions for a single act, if each provision requires proof of an additional fact which the other does not. *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). However, in some cases, a person may be prosecuted under separate provisions, but may not be punished under both provisions.

■ The National Firearms Act creates 12 separate firearms offenses. 26 U.S.C.A. § 5861 (West 1980). The total sentence imposed for convictions of possessing an unregistered firearm under subsection (d) and making the same illegal firearm under subsection (f) may not exceed the maximum sentence provided for one violation— ten years. *United States v. Kaplan*, 588 F.2d 71, 75 (4th Cir.1978). However, the making and the transferring of the same illegal firearm (subsection (e)) are separate and independent crimes which permit separate sentences. *Id.*

Prior to 1986 the Omnibus Crime Control Act proscribed possession and receipt of firearms by convicted felons in two separate sections, 18 U.S.C.A. § 922(h) (West 1976) and 18 U.S.C.A.App. § 1202(a) (West 1985).[2] A convicted felon could be prosecuted simultaneously for possession of a firearm under Section 1202(a) and receipt of the same firearm under Section 922(h), but he could not be convicted under both sections when the possession was incidental to receipt of the same gun. *Ball v.*

---

1. Sections 922(g) and (h) were amended by the Firearms Owners' Protection Act, Pub.L. No. 99–308, § 102(6)(A), 100 Stat. 449, 452 (1986) which removed the prohibition of transportation and receipt by a person under indictment.

2. Section 1202 was repealed by the Firearms Owners' Protection Act, Pub.L. No. 99–308, § 104(b), 100 Stat. 449, 459 (1986).

*United States,* 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985); *see also United States v. Burton,* 629 F.2d 975 (4th Cir. 1980), *cert. denied,* 450 U.S. 968, 101 S.Ct. 1487, 67 L.Ed.2d 618 (1981).

While this court has not ruled on the permissibility of cumulative punishment for possession of an unregistered firearm under Section 5861(d) and interstate transportation of the same firearm under Section 5861(j), the Fifth Circuit has held that consecutive maximum sentences under these sections were improper where the possession and the transportation were part of a single act. *United States v. McDaniel,* 550 F.2d 214, 219 (5th Cir.1977).

In *McDaniel,* the court acknowledged that it is possible to possess a firearm without transporting it. However, the court found that on the facts of that case, personally transporting the gun across the state line in a truck involved possession and concluded that the defendant could not commit the transportation offense without committing the possession offense.

In this case, Velazquez and Santiesteban did not personally transport the hand grenade, rather they caused the airline to transport it for them. While in transit, they did not have physical possession of the hand grenade. Constructive possession attached when they landed and were in a position to claim the bag. The possession and the transportation were not part of a single act and the possession was not incidental to the transportation. Thus, the imposition of consecutive sentences was permissible.

### IV.

■ Prior to 1986,[3] 18 U.S.C.A. § 922 (West 1976) provided that it was unlawful for any person under indictment for a crime punishable by imprisonment for a term exceeding one year to ship or transport any firearm in interstate commerce, Section 922(g), or to receive any firearm which had been shipped or transported in interstate commerce, Section 922(h). Santiesteban challenges his conviction for con-

spiracy to violate Sections 922(g) and (h), asserting that the government failed to prove that he knew that Velazquez was under indictment for a crime punishable by imprisonment for a term exceeding one year. We hold that the government was not required to prove his knowledge of Velazquez's indictment.

■ Generally, the presence of scienter is a requirement of criminal responsibility. *United States v. Freed,* 401 U.S. 601, 607, 91 S.Ct. 1112, 1117, 28 L.Ed.2d 356 (1971). However, exceptions are found in regulatory measures enacted in the interest of public safety, such as Sections 922(g) and (h), the principal purpose of which is "to keep firearms away from the persons Congress classified as potentially irresponsible and dangerous." *Barrett v. United States,* 423 U.S. 212, 218, 96 S.Ct. 498, 502, 46 L.Ed.2d 450 (1976); *Freed,* 401 U.S. at 609, 91 S.Ct. at 1118. Further, where knowledge of a factual element is not necessary for conviction on a substantive offense, neither is it required for conviction on conspiracy to commit that offense. *Freed, supra; see also United States v. Feola,* 420 U.S. 671, 688, 95 S.Ct. 1255, 1266, 43 L.Ed.2d 541 (1975).

In *Freed,* the defendants were indicted under 26 U.S.C.A. § 5861 (West 1980) for possession and conspiracy to possess unregistered hand grenades. The trial court dismissed the indictment for absence of an allegation of scienter. The Supreme Court held that Section 5861 does not require specific intent or knowledge that a firearm is unregistered as an element of the substantive offense or as an element of conspiracy.

Here, scienter is not an element under Sections 922(g) and (h), and Congress did not make ignorance of the law a defense in prosecutions under these subsections. *United States v. Williams,* 588 F.2d 92 (4th Cir.1978). Just as the government was not required to prove that Santiesteban knew that the firearm had previously traveled in interstate commerce, *United States v. Thrasher,* 569 F.2d 894 (5th Cir.),

---

**3.** See footnote 1.

cert. denied, 439 U.S. 840, 99 S.Ct. 128, 58 L.Ed.2d 137 (1978), likewise, it was not required to prove that he knew Velazquez was under indictment for a crime punishable by imprisonment for more than one year. *See United States v. Nelson*, 733 F.2d 364, 371 (5th Cir.), *cert. denied*, 469 U.S. 937, 105 S.Ct. 341, 83 L.Ed.2d 276 (1984).

## V.

Under 49 U.S.C.A. § 1472($l$)(1) (West Supp.1987), placing loaded firearms or explosive devices aboard an aircraft intended for air transportation carries a maximum prison term of one year. Subsection ($l$)(2) provides an enhanced maximum penalty of five years if such placement is done willfully and with reckless disregard for the safety of human life. Santiesteban challenges his convictions under Sections 1472($l$)(1) and ($l$)(2), contending that the trial court lacked jurisdiction over these counts due to improper venue. In the alternative, he challenges his five-year sentences under subsection ($l$)(2), asserting that the government failed to prove reckless disregard. We affirm the convictions and sentences.

Santiesteban asserts that proper venue for a prosecution under Section 1472($l$) is the district in which the aircraft is boarded or loaded—the Southern District of Florida. Regardless of the merits of this argument, he waived any objections to improper venue by not raising the issue until the time of his sentencing hearing after conviction. *United States v. Winship*, 724 F.2d 1116, 1124 (5th Cir.1984).

The jury was properly instructed on the issue of reckless disregard for the safety of human life. The verdict under the enhanced provision of subsection ($l$)(2) is supported by the testimony of the Alcohol, Tobacco, and Firearms Bureau agent that placement of hand grenades is absolutely prohibited on passenger aircrafts and that extreme heat or fire may cause explosion of the hand grenade and firing of a loaded gun.

## VI.

Velazquez also challenges the denial of his motion to suppress the firearms and his statement of ownership of the Baretta pistol. The record indicates that there is no merit to his assertion that he does not understand English and is therefore incapable of knowingly consenting to the searches.

Prior to trial, a U.S. Magistrate conducted a full evidentiary hearing on the motion to suppress and found that Velazquez's claim that he does not understand English was unworthy of belief. She concluded that his consent to a search of his person and bag was given freely and intelligently, with knowledge of the reason for the request and of his right to refuse, and recommended that the motion be denied. The district court's adoption of the recommendation to deny the motion to suppress is fully supported by the evidence and reasoning as outlined in the Magistrate's Memorandum and Recommendation. *United States v. Velazquez*, Cr. No. 85–122 (W.D. N.C. March 31, 1986).

AFFIRMED.