959 F.2d 232
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Marcelo MONTALVO, a/k/a Chelo, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Landon Morris FUNDERBURK, Jr., a/k/a Buzz, Defendant-Appellant.
 Nos. 91-5039, 91-5040.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 6, 1991.
Decided April 3, 1992.
 
 1
 Appeals from the United States District Court for the Western District of North Carolina, at Charlotte. Robert D. Potter, District Judge. (CR-90-52-C)
 
 
 2
 Argued: George V. Laughrun, II, Goodman, Carr, Nixon & Laughrun, Charlotte, N.C., for appellants; Robert James Conrad, Jr., Assistant United States Attorney, Charlotte, N.C., for appellee.
 
 
 3
 On Brief: Thomas J. Ashcraft, United States Attorney, Kenneth D. Bell, Assistant United States Attorney, Charlotte, N.C., for appellee.
 
 
 4
 W.D.N.C.
 
 
 5
 AFFIRMED.
 
 
 6
 Before WIDENER and HAMILTON, Circuit Judges, and DENNIS W. SHEDD, United States District Judge for the District of South Carolina, sitting by designation.
 
 OPINION
 DENNIS W. SHEDD, District Judge:
 
 7
 Marcelo Montalvo appeals from his conviction and sentencing for three criminal offenses arising from his participation in a conspiracy to possess and distribute marijuana. Montalvo raises three issues on appeal: (1) whether the evidence was sufficient to submit the conspiracy count to the jury; (2) whether his motion for judgment of acquittal based on grounds of improper venue should have been granted; and (3) whether the determination of the quantity of drugs at the sentencing phase was proper. Landon Funderburk appeals from his sentencing following his plea of guilty on nine counts related to the drug conspiracy. Funderburk contends that the trial court erred in enhancing his guidelines sentence based upon his role in the conspiracy. Finding no error, we affirm the judgments of the district court.
 
 
 8
 * Montalvo and Funderburk were indicted along with approximately 26 other defendants on March 3, 1990, for numerous violations of federal drug laws. This indictment was superseded on June 7, 1990.[1] By December 3, 1990, all defendants charged in the indictment, including Funderburk, had pled guilty except for Montalvo. On that day, the government sought and obtained a three-count superseding indictment[2] against Montalvo and the district court called Montalvo's case to trial. At the conclusion of the government's case, counsel for Montalvo moved for a judgment of acquittal. The district court denied this motion and the jury thereafter returned a verdict of guilty on all three counts. On March 26, 1991, the district court sentenced Montalvo to 136 months in prison, and sentenced Funderburk to 108 months in prison on four guideline counts and ten years in prison to run consecutive with the guideline sentence on five non-guideline counts. The district court also sentenced both defendants to five years supervised release.
 
 
 9
 Generally, the evidence presented below shows that Montalvo and Funderburk participated in an extensive marijuana ring operated by Leonel Bazan and Encarnacion Chapa, which smuggled marijuana into the United States from Mexico and distributed it in Mecklenburg County, North Carolina, and elsewhere.[3] Montalvo was employed in Houston, Texas, under the supervision of Chapa, as a primary supervisor of drug "stash houses." Montalvo also loaded and concealed marijuana in vehicles; transported drug money from Chapa in Houston to Bazan in Edinburg, Texas; and on at least one occasion, safeguarded $250,000 of drug money. On several occasions, Montalvo was informed by Rendon that marijuana which Montalvo and Rendon were loading into vehicles for transportation was destined for Charlotte, North Carolina. Funderburk was the drug ring's main customer in North Carolina and was involved in at least seven different drug transactions involving approximately 900 pounds of marijuana. Testimony also linked Funderburk to an additional 1,000 pounds of marijuana.
 
 II
 
 10
 As noted, Montalvo raises three issues and Funderburk raises one issue on appeal. We will address each of these issues below.
 
 A.
 
 11
 Initially, we find no merit in Montalvo's claim that the district court erred in submitting the conspiracy count against him to the jury because the government provided insufficient evidence to convict him. We review the sufficiency of the evidence under the standard of Jackson v. Virginia, 443 U.S. 307, 319 (1979), which inquires whether "any rational trier of fact could have found the essential elements of the crime [charged] beyond a reasonable doubt," and requires us in applying the standard to construe the evidence in the light most favorable to the government, assuming its credibility, drawing all favorable inferences from it. See also United States v. Giunta, 925 F.2d 758, 764 (4th Cir.1991).
 
 
 12
 The elements of the crime of conspiracy in general are simple: (1) an agreement between two or more persons (not including government agents) (2) to commit in concert an unlawful act. Giunta, 925 F.2d at 764. The essential elements of the particular conspiracy charged to Montalvo here are (1) an agreement by Montalvo with Bazan, Chapa, and others, both known and unknown; (2) to transport and distribute marijuana from Mexico through Texas to Mecklenburg County, North Carolina, and elsewhere.[4] To sustain this conviction, " 'there need only be a showing that [Montalvo] knew of the conspiracy's purpose and some action indicating his participation....' " United States v. Brown, 856 F.2d 710, 711 (4th Cir.1988) (quoting United States v. Collazo, 732 F.2d 1200, 1205 (4th Cir.1984), cert. denied sub nom. Alvarez v. United States, 469 U.S. 1105 (1985)). These elements may be shown by circumstantial evidence such as Montalvo's relationship with other members of the conspiracy, the length of this association, his attitude and conduct, and the nature of the conspiracy. Brown, 856 F.2d at 711. Complete knowledge of all aspects of the conspiracy is not required. United States v. Mabry, 953 F.2d 127, 130 (4th Cir.1991).
 
 
 13
 There is substantial evidence that Montalvo conspired with others, including Bazan and Chapa, to transport and distribute marijuana as charged in the indictment. As noted above, Montalvo supervised stash houses where the marijuana was located. Montalvo was described by Rendon, a co-conspirator, as the "man in charge" of the stash houses which, according to Rendon, contained between 1,000 and 3,000 pounds of marijuana each time that he visited.[5] Montalvo also loaded and concealed large amounts of marijuana into vehicles for distribution, delivered drug money from Chapa to Bazan, and safeguarded drug money for Chapa. Taken in the light most favorable to the government, there is more than sufficient evidence from which the jury could conclude that Montalvo conspired to distribute marijuana.
 
 B.
 
 14
 We next turn to Montalvo's claim that venue in the Western District of North Carolina was improper. We first note that at trial, Montalvo moved for judgment of acquittal at the conclusion of the government's case; however, the record shows that counsel did not raise the issue of venue before the district court. Montalvo's failure to raise this issue below constitutes a waiver of this claim on appeal. United States v. Santiesteban, 825 F.2d 779, 783 (4th Cir.1987).
 
 
 15
 Moreover, regardless of Montalvo's failure to raise this claim below, we find Montalvo's argument without merit. Federal venue for narcotics cases is controlled by 18 U.S.C. § 3237(a), which provides, in pertinent part, that "any offense against the United States begun in one district and completed in another or committed in more than one district may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed." The burden of proving that a crime occurred in the district where prosecuted rests with the government; however, the government does not have to prove where the crime was committed beyond a reasonable doubt. United States v. Barsanti, 943 F.2d 428, 434 (4th Cir.1991). Instead, the government must only prove where the crime was committed by a preponderance of the evidence. Id. Circumstantial evidence alone may be sufficient to find proper venue. United States v. Griley, 814 F.2d 967, 973 (4th Cir.1987).
 
 
 16
 The evidence presented below fully establishes that venue was proper in the Western District of North Carolina on all three counts. For example, Rendon testified that he told Montalvo while they were loading marijuana into vehicles for transportation that the marijuana was destined for Charlotte, which is in the Western District of North Carolina. Moreover, Rendon also testified that on one specific occasion, Montalvo cut 166 pounds of marijuana into smaller packages and helped him conceal it in a vehicle which was used by Richard Diaz, a co-conspirator, for transportation to and subsequent distribution in the Western District of North Carolina. Diaz was eventually arrested, and his vehicle and marijuana, which was loaded by Montalvo, were seized in Burke County, North Carolina, which is in the Western District. According to testimony by Chapa, Montalvo had a financial interest in the marijuana transported into the Western District of North Carolina since he was paid out of the proceeds from the sale of the marijuana for each vehicle that he loaded. This is illustrated by the fact that Montalvo was not paid for his work in loading the vehicle used by Diaz because the vehicle and drugs were seized in the Western District of North Carolina.
 
 
 17
 We find this evidence more than sufficient to support venue in the Western District of North Carolina on all three counts under 18 U.S.C. § 3237(a). With respect to Count I (conspiracy), Montalvo knowingly participated in the conspiracy to transport into and distribute marijuana in the Western District of North Carolina. Likewise, with respect to Count II (possession with intent to distribute), Montalvo's possession of the marijuana at the time he helped cut and package the 166 pounds of marijuana, and load it in Diaz's van, which was later seized in the Western District of North Carolina, is sufficient to support venue in the Western District. Finally, with respect to Count III (aiding and abetting distribution), Montalvo's actions in preparing the marijuana and loading it into Diaz's van establish venue in the Western District of North Carolina since the van and marijuana were seized there.
 
 C.
 
 18
 Montalvo next argues that the district court erred in estimating the quantity of controlled substances for the purposes of his sentencing. The district court established a base offense level for Montalvo's sentencing by using the figure of 8,145 kilograms of marijuana. This is the figure used in the original bill of indictment and set forth in the pre-sentence report. Again, the record shows that Montalvo waived this claim by failing to raise an objection below on this point. Wren v. United States, 540 F.2d 643, 644 n. 1 (4th Cir.1975). Furthermore, notwithstanding this waiver, we find no error by the district court on this issue.
 
 
 19
 It is the government's duty to prove the quantity of drugs involved by a preponderance of the evidence and the district court's calculation of the quantity of drugs is a factual determination which will not be set aside unless clearly erroneous. United States v. Goff, 907 F.2d 1441, 1444 (4th Cir.1990). Under Application Note 1 accompanying Section 2D1.4 of the federal sentencing guidelines, "drug conspirators should be punished in a manner commensurate with the scale of the conspiracy, rather than their personal participation in the conspiracy." United States v. Campbell, 935 F.2d 39, 46 (4th Cir.), cert. denied, 112 S.Ct. 348 (1991). Application Note 2 under this same section further provides the district court with discretion in determining the scale of the conspiracy and approximating the quantity of drugs relevant to the conspiracy. Id.
 
 
 20
 There is testimony in the record by Rendon that on several occasions he visited stash houses holding thousands of pounds of marijuana and observed Montalvo being present. Rendon also testified concerning Montalvo's safeguarding of $250,000 of drug money. This evidence, when coupled with other evidence concerning the scope of the conspiracy, certainly supports the district court's determination of the quantity of drugs. Therefore, we cannot say that the district court's finding is clearly erroneous.
 
 D.
 
 21
 Finally, we turn to Funderburk's challenge to his sentence enhancement based upon his role in the conspiracy. The district court enhanced Funderburk's base offense level pursuant to Section 3B1.1(b) of the sentencing guidelines, finding Funderburk to be a "manager" or "supervisor" of criminal activity involving five or more participants or which was otherwise extensive. Funderburk acknowledges that he was a purchaser of marijuana; however, he argues that there was no evidence presented at either Montalvo's trial or at his sentencing hearing to establish that he was a manager or supervisor. We review the district court's factual determination of Funderburk's role for clear error. United States v. Sheffer, 896 F.2d 842, 846 (4th Cir.), cert. denied, 111 S.Ct. 112 (1990).
 
 
 22
 The evidence presented below shows that Funderburk was a major customer in an international drug enterprise and that he used multiple stash houses, including one partially funded by him, to further his own ancillary marijuana operation. From this evidence, the district court concluded that Funderburk was a manager or supervisor under the guidelines. We are not persuaded to say that this factual determination is clearly erroneous. See United States v. Paz, 927 F.2d 176, 179 (4th Cir.1991) (affirming finding that defendant was a manager based on his control of drug money, drug products, and residences where trafficking was performed).
 
 III
 
 23
 After a thorough review of the record and the controlling authorities, we find no error in the conviction and sentences imposed. The judgments of the district court as to both defendants are affirmed.
 
 
 24
 AFFIRMED.
 
 
 25
 WIDENER and HAMILTON, Circuit Judges, joined.
 
 
 
 [1]
 The indictment charged violations of 18 U.S.C. §§ 2 and 545, and 21 U.S.C. §§ 841(a)(1), 846, and 848
 
 
 [2]
 This indictment charged violations of 18 U.S.C. § 2, and 21 U.S.C. §§ 841(a)(1) and 846
 
 
 [3]
 Montalvo was convicted largely on the testimony of Chapa, Bazan, and Francisco Rendon, who was a co-conspirator. Rendon also testified at the trial of Montalvo concerning various drug transactions that he had conducted with Funderburk
 
 
 [4]
 Although Montalvo argues that there was no evidence to link him to an agreement to distribute marijuana in the Western District of North Carolina, the indictment clearly states that the conspiracy as charged was not limited to that district
 
 
 [5]
 We note that "[i]n the case of illicit drugs, intent to distribute may in proper circumstances be inferred from the amount in possession." United States v. Welebir, 498 F.2d 346, 350 (4th Cir.1974)