**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Richard LANGLEY, Defendant–**
**Appellant.**

No. 93–5219.

United States Court of Appeals,
Fourth Circuit.

Argued March 7, 1995.

Decided Aug. 14, 1995.

**ARGUED:** Walter Bruce Dalton, Norfolk, VA, for appellant. Arenda L. Wright Allen, Asst. U.S. Atty., Norfolk, VA, for appellee. **ON BRIEF:** Kenneth E. Melson, U.S. Atty., Norfolk, VA, for appellee.

Before ERVIN, Chief Judge, RUSSELL, WIDENER, HALL, MURNAGHAN, WILKINSON, WILKINS, NIEMEYER, HAMILTON, LUTTIG, WILLIAMS, MICHAEL, and MOTZ, Circuit Judges, and PHILLIPS, Senior Circuit Judge, sitting en banc.

Affirmed by published opinion. Judge HAMILTON wrote the majority opinion, in which Judges RUSSELL, WIDENER, HALL, WILKINSON, WILKINS, NIEMEYER, LUTTIG, WILLIAMS, and MOTZ joined. Senior Judge PHILLIPS wrote a concurring and dissenting opinion, in which Chief Judge ERVIN and Judges MURNAGHAN and MICHAEL joined.

## OPINION

HAMILTON, Circuit Judge:

Richard Langley appeals his convictions for making a false statement to a federally-licensed firearms dealer, *see* 18 U.S.C. § 924(a)(1)(A), and knowingly possessing a firearm after having previously been convicted of a crime punishable by a term of imprisonment exceeding one year, *see* 18 U.S.C. § 922(g)(1).[1] We affirm.

### I

In October 1991, Langley purchased two firearms from Guns Unlimited, a federally-licensed firearms dealer in Carrollton, Virginia. Prior to the sale, Langley completed Bureau of Alcohol, Tobacco and Firearms (ATF) Form 4473.[2] On ATF Form 4473, Langley certified that he had not been convicted of a crime punishable by a term of imprisonment exceeding one year.

After a routine check of Langley's criminal history, Special Agent Herbert Tatem of the ATF discovered that Langley had previously been convicted of robbery in Pennsylvania, a crime punishable by a term of imprisonment exceeding one year.[3]

On September 24, 1992, a federal grand jury sitting in the Eastern District of Virginia returned a two-count indictment charging Langley with making a false statement to a federally-licensed firearms dealer, *see* 18 U.S.C. § 924(a)(1)(A), and possession of a firearm after having previously been convicted of a crime punishable by a term of imprisonment exceeding one year, *see* 18 U.S.C.

---

**1.** The term "crime punishable by imprisonment for a term exceeding one year" is commonly referred to as a "felony." In this opinion, these terms are used interchangeably.

**2.** ATF Form 4473 must be completed by a person purchasing a firearm from a federally-licensed firearms dealer. One of the questions on the form specifically addresses whether the purchaser has been convicted of a crime punishable by a term of imprisonment exceeding one year. A firearms dealer is prohibited from selling a firearm to a person answering "yes" to this question.

**3.** The record reflects that Langley was initially charged with several offenses in a criminal complaint, but entered a plea of guilty to a single charge of robbery on April 1, 1986. Langley did not appear for sentencing.

§ 922(g)(1). A jury convicted Langley on both counts. The district court sentenced Langley to twelve months' imprisonment, and he now appeals.

## II

Langley argues the district court's instructions to the jury on the § 922(g)(1) felon-in-possession count were erroneous because the jury was not instructed that the government was required to prove, beyond a reasonable doubt, that he knew: (1) he was a convicted felon, and (2) the firearm travelled in or affected interstate commerce. With respect to this count, the district court instructed the jury that it should return a verdict of guilty if it found beyond a reasonable doubt that: (1) Langley had been convicted in some court of a crime punishable by a term of imprisonment exceeding one year; (2) he thereafter voluntarily and intentionally possessed a firearm; and (3) the firearm had been shipped or transported in interstate or foreign commerce at some point during its existence. We conclude that the district court properly instructed the jury.

## A

Section 922(g)(1), enacted as part of the Firearms Owners' Protection Act of 1986 (FOPA), Pub.L. 99–308, 100 Stat. 449 (1986), is a consolidation of portions of three former provisions of Title 18: § 922(g)(1) (unlawful for convicted felon to ship or transport a firearm in interstate commerce); § 922(h)(1) (unlawful for convicted felon to receive a firearm that has been shipped or transported in interstate commerce); and § 1202(a) (18 U.S.C.App.) (unlawful for convicted felon to receive, possess, or transport a firearm in or affecting commerce). The predecessor statutes to § 922(g)(1) contained no *mens rea* requirement. However, cases interpreting these predecessor statutes made clear that these statutes required proof of a *mens rea* element and were not strict liability offenses; that is, courts required proof that "the defendant knowingly received, transported, or possessed a firearm," but, at the same time,

recognized that "the defendant's knowledge of the weapon's interstate nexus or of his felon status was irrelevant." *United States v. Dancy,* 861 F.2d 77, 81 (5th Cir.1988) (collecting cases); *see also United States v. Santiesteban,* 825 F.2d 779, 782–83 (4th Cir. 1987); *United States v. Williams,* 588 F.2d 92, 92–93 (4th Cir.1978).

Similar to its predecessors, § 922(g)(1) contains no *mens rea* requirement. Section 922(g)(1) makes it:

> unlawful for any person ... who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year ... to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

When Congress amended § 922 in 1986, 18 U.S.C. § 924(a), the penalty provision applicable to § 922, was also amended. *See* Pub.L. 99–308, § 104(a), 100 Stat. 449, 456 (1986). Pre–FOPA § 924(a) provided penalties for "[w]hoever violate[d]" any provision of Title 44, including § 922. The FOPA version of § 924(a) provided penalties for violations of Title 44 committed either "knowingly" or "willfully." *Id.* (codified until amended in 1988 at 18 U.S.C. § 924(a)(1)(B)-(D)). The FOPA penalty provision applicable to § 922(g) provided "whoever ... knowingly violates subsection ... (g)." In 1988, Congress amended § 924(a), increasing the term of imprisonment for, among other things, certain "knowing" violations, including violations of § 922(g). *See* Pub.L. 100–690, § 6462, 102 Stat. 4359, 4374 (currently codified at 18 U.S.C. § 924(a)(1) and (2)).[4]

Langley argues that Congress' insertion of the word "knowingly" in § 924(a), as amended in 1986, mandates that the government must prove, in a § 922(g)(1) prosecution, not only that the defendant knowingly possessed, transported, shipped, or received the firearm, but also that he or she knew, at the time he or she knowingly possessed, transported,

---

4. Section 924(a)(2) provides:
   Whoever knowingly violates subsection (d), (g), (h), (i), (j), or (*o*) of section 922 shall be fined

as provided in this title, imprisoned not more than 10 years, or both.

shipped, or received the firearm, of his or her prior felony conviction and the firearm's interstate nexus. We disagree.

■ It is firmly entrenched that Congress is presumed to enact legislation with knowledge of the law; that is with the knowledge of the interpretation that courts have given to an existing statute. *See Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 267–68, 112 S.Ct. 1311, 1317–18, 117 L.Ed.2d 532 (1992); *Miles v. Apex Marine Corp.*, 498 U.S. 19, 32, 111 S.Ct. 317, 325, 112 L.Ed.2d 275 (1990); *Cannon v. University of Chicago*, 441 U.S. 677, 696–97, 99 S.Ct. 1946, 1957–58, 60 L.Ed.2d 560 (1979). "Thus, it is proper to consider that Congress acts with knowledge of existing law, and that 'absent a clear manifestation of contrary intent, a newly-enacted or revised statute is presumed to be harmonious with existing law and its judicial construction.' " *Estate of Wood v. C.I.R.*, 909 F.2d 1155, 1160 (8th Cir.1990) (quoting *Johnson v. First Nat'l Bank of Montevideo*, 719 F.2d 270, 277 (8th Cir.1983)). Because these concepts were firmly entrenched judicially, we may assume that Congress was aware that: (1) no court prior to FOPA required the government to prove knowledge of felony status and/or interstate nexus in prosecutions under § 922(g)(1)'s predecessor statutes; (2) the only knowledge the government was required to prove in a prosecution under § 922(g)(1)'s predecessor statutes was knowledge of the possession, transportation, shipment, or receipt of the firearm; and (3) Congress created the FOPA version of § 922(g)(1) and § 924(a) consistent with these judicial interpretations. We, therefore, must determine whether, in enacting FOPA, Congress manifested a clear intent to change the well-settled law.

### B

■ Prior to FOPA, many provisions regulating firearms were classified as strict liability offenses. *See United States v. Collins*, 957 F.2d 72, 74 (2d Cir.1992); *United States v. Sherbondy*, 865 F.2d 996 (9th Cir. 1988). Because liability could be imposed on law-abiding citizens for "unintentional missteps," *United States v. Obiechie*, 38 F.3d 309, 312 (7th Cir.1994), Congress enacted FOPA in 1986, which "added a set of *mens rea* requirements by amending section 924(a)(1) to punish certain violations only if they are committed 'willfully' and others only if they are committed 'knowingly.' " *Sherbondy*, 865 F.2d at 1001; *see also* David T. Hardy, *The Firearms Owners' Protection Act: A Historical and Legal Perspective*, 17 Cumb. L.Rev. 585, 604–07 (1987). Though it is unusual that Congress chose to add a *mens rea* requirement to a penalty provision, we agree with the *Sherbondy* court that "it is highly likely that Congress used section 924(a) simply to avoid having to add 'willful' or 'knowing' into every subsection of section 922." *Sherbondy*, 865 F.2d at 1002.

■ Prior to the passage of FOPA, the scienter debate pitted the Treasury Department against the National Rifle Association (the NRA). In an effort to make prosecutions easier, the Treasury Department advocated the "knowing" standard; while the NRA, in an effort to protect gun owners, wanted the "willful" standard to govern. Hardy, *supra*, at 615–16. A compromise was reached: the term "knowingly" would govern the more serious firearm offenses. *Id.* at 615–17, 647–48; *Sherbondy*, 865 F.2d at 1002. Accordingly, it is fair to say that Congress, through FOPA, intended the term "knowingly" to modify each section of 922 that it applied to.

■ It is far from clear, however, exactly what Congress intended to modify in each section of 922 with its use of the term "knowingly." For example, it is not clear from the legislative history of FOPA whether Congress intended to extend the term "knowingly" to one or all of the substantive elements of each offense in § 922. More pertinent to this case, in the legislative history of FOPA, there is no suggestion that Congress intended to dispense with the judicial interpretation of § 922(g)(1)'s predecessor statutes. At most, the legislative history suggests that Congress intended to avoid the prosecution of "unintentional missteps," *Obiechie*, 38 F.3d at 312. And although an individual who possesses a firearm, unaware that it is stolen, may commit an "unintentional misstep[ ]," *id.*, the same cannot be said for the felon (an

individual who has pleaded guilty to, or has been convicted by a jury of, a felony) who knowingly possesses a firearm. Clearly, the act of possessing a firearm by a felon does not fall into the class of "unintentional missteps," *id.*, envisioned by Congress when it enacted FOPA. Because the legislative history is at best unclear (but more accurately silent) on whether Congress intended to require the government to prove knowledge of felony status or interstate nexus in a § 922(g)(1) prosecution, we cannot conclude that Congress' insertion of the term "knowingly" in the penalty provision applicable to § 922(g)(1) represents " 'a clear manifestation of contrary intent,' " *Estate of Wood,* 909 F.2d at 1160 (quoting *Johnson,* 719 F.2d at 277), allowing us to displace the presumption that Congress created the. FOPA version of § 922(g)(1) consistent with existing law and the settled judicial understanding of § 922(g)(1)'s predecessor statutes. If Congress intended such a revolutionary change in the law, a change that involves the perniciousness of felons possessing firearms, it would have made clear its intention to do so.

Our conclusion that Congress did not intend, through FOPA, to place the additional evidentiary burdens on the government suggested by Langley is supported by several other considerations. First, it is highly unlikely that Congress intended to make it *easier* for felons to avoid prosecution by permitting them to claim that they were unaware of their felony status and/or the firearm's interstate nexus. Second, in light of Congress' repeated efforts to fight violent crime and the commission of drug offenses, it is unlikely that Congress intended to make the application of the enhancement provision contained in § 924(e)(1)[5] more difficult to apply.

■ In sum, we hold that in order to prove a violation of § 922(g)(1), the government must prove, beyond a reasonable doubt, that: (1) the defendant previously had been convicted of a crime punishable by a term of imprisonment exceeding one year; (2) the defendant knowingly possessed, transported, shipped, or received, the firearm; and (3) the possession was in or affecting commerce, because the firearm had travelled in interstate or foreign commerce at some point during its existence. Because the district court correctly instructed the jury, Langley's challenge to the jury instructions cannot be sustained.

C

Our holding today comports with all of the post-FOPA decisions that have, by implication, rejected the notion that the government is required to prove either knowledge of felony status or interstate nexus in a § 922(g)(1) prosecution. *See United States v. Ramos,* 961 F.2d 1003, 1005 (1st Cir.) (In a § 922(g)(1) prosecution, the "government need prove only the requisite predicate offense and that the defendant knowingly possessed firearms with prescribed interstate connections."), *cert. denied,* — U.S. —, 113 S.Ct. 364, 121 L.Ed.2d 277 (1992); *United States v. McNeal,* 900 F.2d 119, 121 (7th Cir.1990) ("In order to prove a violation of 18 U.S.C. § 922(g)(1), the government is required to show: 1) that the defendant previously had been convicted of a felony; 2) that the defendant knowingly possessed the gun; and 3) that the possession was in or affecting interstate commerce."); *United States v. Shunk,* 881 F.2d 917, 921 (10th Cir.1989) (In a § 922(g)(1) prosecution, the government must prove: "(1) the defendant was convicted of a felony; (2) [t]hereafter the defendant knowingly possessed a firearm; and (3) [t]he defendant's possession of the firearm was in or affecting commerce."); *Dancy,* 861 F.2d at 81–82.[6]

Furthermore, we do not believe the Supreme Court's recent decisions of *United*

---

**5.** Section 924(e)(1) provides for increased penalties for individuals who violate § 922(g) and have three prior convictions for violent felonies or serious drug offenses, provided the predicate crimes were punishable by a term of imprisonment exceeding one year.

**6.** In each of these cases, save *Dancy,* the court did not specifically address whether the government was required to prove knowledge of felony status or interstate nexus in a § 922(g)(1) prosecution. In *Dancy,* the court explicitly rejected the notion that the government was required to prove knowledge of felony status in a § 922(g)(1) prosecution. *See Dancy,* 861 F.2d at 81–82.

*States v. X–Citement Video, Inc.,* — U.S. ——, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994) and *Staples v. United States,* — U.S. ——, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994), dictate the outcome of this case.

*Staples* came first, and there the Supreme Court held that, in a § 5861(d) prosecution involving the possession of a machinegun without proper registration, the government must prove that the defendant knew the weapon he possessed was capable of automatic firing, thereby allowing the firearm to fall within the statutory definition of machinegun. *Id.* at ——, 114 S.Ct. at 1804. The statute in *Staples,* which criminalized the possession of a machinegun without proper registration, contained no *mens rea* requirement. The Court extended a *mens rea* requirement (knowledge) beyond that of mere possession to the nature of the weapon (its capability of automatic firing) over a concern that to hold otherwise would criminalize behavior that fell within "a long tradition of widespread lawful gun ownership by private individuals." — U.S. at —— – ——, 114 S.Ct. at 1799–1800. In other words, the *mens rea* requirement was extended to all the elements necessary to avoid prosecution of conduct a reasonable person would otherwise expect to be innocent. The Court also explained that a statute's harsh penalty was a "significant consideration in determining whether the statute should be construed as dispensing with *mens rea.*" *Id.* at ——, 114 S.Ct. at 1802.

In *X–Citement Video,* the Court held that 18 U.S.C. § 2252, which prohibits knowingly transporting, shipping, receiving, distributing, or reproducing a visual depiction, 18 U.S.C. § 2252(a)(1) and (2), if the depiction "involves the use of a minor engaging in sexually explicit conduct," 18 U.S.C. § 2252(a)(1)(A) and (2)(A), requires the government to prove both the defendant's knowledge of "the sexually explicit nature of the material and . . . to the age of the performers." — U.S. at ——, 115 S.Ct. at 472. As in *Staples,* the driving force behind the Court's decision in *X–Citement Video* was to read the statute to avoid placing ordinary citizens at risk of criminal prosecution for "otherwise innocent conduct." *Id.* at ——,

115 S.Ct. at 469. Because "one would reasonably expect to be free from regulation when trafficking in sexually explicit, though not obscene, materials involving adults," the Court extended the term "knowingly" to modify the age of the performer element. *Id.* The Court characterized the age of the performer element as the "crucial element separating legal innocence from wrongful conduct." *Id.*

For three reasons, we conclude that *Staples* and *X–Citement Video* do not dictate the outcome of Langley's case. First, since this is a prosecution under a felon-in-possession statute, we see no need to apply a scienter requirement to "each of the statutory elements which criminalize otherwise innocent conduct," *X–Citement Video,* — U.S. at ——, 115 S.Ct. at 469, because the reasonable expectations of felons are wholly distinct from the reasonable expectations of ordinary citizens. In other words, an ordinary citizen "would reasonably expect to be free from regulation," *id.,* when possessing a firearm unaware of its automatic firing capability as in *Staples* and when trafficking in sexually explicit, though not obscene, materials involving adults as in *X–Citement Video;* but the same cannot be said with respect to a felon who possesses a firearm, because a person who pleads guilty to, or is convicted by a jury of, a felony cannot, thereafter, reasonably expect to be free from regulation when possessing a firearm, notwithstanding his or her unawareness of his or her felony status or the firearm's interstate nexus. Second, the Court in *Staples* and *X–Citement Video* was not confronted with the issue of extending a *mens rea* requirement to a defendant's felony status or the issue of extending a *mens rea* requirement to an interstate nexus element. Certainly, the elements of felony status and interstate nexus are not traditionally associated with a *mens rea* requirement. Third, the statutes at issue in *Staples* and *X–Citement Video* did not have long-standing, firmly entrenched, uniform judicial interpretations that necessitated the application of the presumption that "Congress acts with knowledge of existing law, and that 'absent a clear manifestation of contrary intent, a newly-enacted or revised statute is presumed to be harmonious with existing law and its judicial

construction,' " *Estate of Wood,* 909 F.2d at 1160 (quoting *Johnson,* 719 F.2d at 277).

### III

■ Langley also contends that the evidence was insufficient to support his conviction on both counts. Because the evidence was sufficient to permit a rational jury to find each essential element of the crimes charged, beyond a reasonable doubt, we reject Langley's contention. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Accordingly, the judgment of the district court is affirmed.

*AFFIRMED.*

PHILLIPS, Senior Circuit Judge, concurring and dissenting:

I concur in the judgment and in all of the majority opinion save Part II which holds that the express "knowingly" requirement now applicable to the § 922(g)(1) "felon-in-possession" offense does not require, in order to convict, proof that the accused knew at the critical time charged that he "ha[d] been convicted in any court of a crime punishable by imprisonment for a term exceeding one year,"[1] it being sufficient merely to prove that he had been. I dissent from that holding, and would hold to the contrary that the express knowledge requirement runs to this substantive element of the offense as well as the others. But because I would also hold that in this particular case the district court's failure so to instruct the jury was harmless

error, I concur in the judgment affirming the conviction on the § 922(g)(1) "felon-in-possession" count as well as that on the § 924(a)(1)(A) "false-statement" count.

The discussion that follows therefore concerns only my disagreement with the majority's holding on this issue. The discussion essentially tracks that in the vacated panel majority opinion (since withdrawn from publication) which, in addressing the issue, came to the opposite conclusion.[2]

### I

Langley's specific contention is that the district court erred in refusing to instruct the jury that a conviction under § 922(g)(1) requires proof that the defendant knew, at the time he took possession of the firearms, both that he was a convicted felon and that the firearms had moved in interstate commerce. To address this contention in its various aspects, it is necessary to review briefly the history of the statutory language upon which it is based.

Section 922(g)(1) of Title 18, enacted as part of the Firearms Owners' Protection Act of 1986 (FOPA), Pub.L. 99–308, 100 Stat. 449 (1986), is a consolidation of portions of three earlier statutory provisions which together made it unlawful for convicted felons to ship, transport, receive, or possess firearms in interstate commerce.[3] None of § 922(g)(1)'s predecessors contained any explicit *mens rea* language, and it was generally held, both in

---

**1.** Though the short-form, "felon-in-possession," is commonly used in referring to this (and related) provisions, it is important to remember that the relevant statutory language does not use the legal terms "felon" or "felony" in defining the criminal status whose existence makes otherwise innocent conduct criminal. This means that what must be "known," if knowledge of that status *is* an element of the offense, is a raw fact and not its "legal" implications. *Cf. Staples v. United States,* —— U.S. ——, ——, n. 3, 114 S.Ct. 1793, 1805 n. 3, 128 L.Ed.2d 608 (1994) (Ginsburg, J., concurring) (necessary to confine knowledge requirement to "facts that make the defendant's conduct illegal, lest it conflict with the related presumption … that, ordinarily, ignorance of the law or a mistake of law is no defense to criminal prosecution"); *Liparota v. United States,* 471 U.S. 419, 425 n. 9, 105 S.Ct. 2084, 2088 n. 9, 85 L.Ed.2d 434 (1985) (making comparable distinction).

**2.** In tracking that discussion, which addressed the whole of Langley's argument on the issue, there is much that agrees with parallel portions of the majority opinion's analysis on the way to the different conclusions it reaches. Notwithstanding the agreement on those portions, hence some essential duplication, I include the whole in the interest of coherence of the overall analysis.

**3.** Those provisions were former 18 U.S.C. § 922(g)(1) (unlawful for convicted felon to ship or transport firearm in interstate commerce), former 18 U.S.C. § 922(h)(1) (unlawful for convicted felon to receive firearm which has been shipped or transported in interstate commerce), and former 18 U.S.C.App. § 1202(a)(1) (unlawful for convicted felon to receive, possess, or transport firearm in or affecting commerce).

this circuit and elsewhere, that they did not require proof that the defendant acted with knowledge of the fact that he was a convicted felon or that the firearm had·travelled in interstate commerce. *See United States v. Dancy,* 861 F.2d 77, 81 (5th Cir.1988) (per curiam) (post-FOPA decision collecting pre-FOPA cases); *see also United States v. Santiesteban,* 825 F.2d 779, 782–83 (4th Cir. 1987); *United States v. Williams,* 588 F.2d 92, 92–93 (4th Cir.1978). Instead, those provisions were consistently interpreted to·require proof of no *mens rea* other than that the defendant had "knowingly" engaged in the prohibited *conduct* of shipping, transporting, receiving, or possessing a firearm. *See Dancy,* 861 F.2d at 81; *United States v. Goodie,* 524 F.2d 515, 518 (5th Cir.1975) ("[T]he only knowledge of defendant that is a necessary element of the receiving crime [former 18 U.S.C. § 1202(a)(1)] is that he knowingly received a firearm."), *cert. denied,* 425 U.S. 905, 96 S.Ct. 1497, 47 L.Ed.2d 755 (1976).[4]

Like its predecessors, § 922(g)(1) itself contains no explicit *mens rea* language. Instead, it provides simply that it "shall be unlawful for any person ... who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year ... to ship or transport in interstate or foreign commerce, or [to] possess in or affecting commerce, any firearm ...; or ·to receive any firearm ... which has been shipped· or transported in interstate or foreign commerce." 18 U.S.C.A. § 922(g)(1) (West Supp.1994). But when Congress enacted § 922(g)(1), it also amended the basic penalty provision for all of the § 922 offenses, 18 U.S.C. § 924(a), to add the *mens rea* language at issue. *See* Pub.L. No. 99–308, § 104(a)(1), 100 Stat. 449, 456 (1986). The original version of § 924(a) had provided simply that "[w]hoever *violates*" any provision of Chapter 44 of Title 18, including any provision of § 922, was subject to a fine of not more than $5,000, imprisonment for not more than 5 years, or both. 18 U.S.C.A. § 924(a) (West 1976) (emphasis added). The 1986 amendment to § 924(a) replaced this broad "whoever violates" language with language providing penalties for only those violations of Chapter 44 that were committed either "knowingly" or "willfully." *See* Pub.L. No. 99–308, § 104(a)(1), 100 Stat. 449, 456 (1986) (codified, until amended in 1988, at 18 U.S.C. § 924(a)(1)(B)-(D)) (providing that "whoever ... *knowingly* violates" certain provisions of § 922, including § 922(g), or "*willfully* violates" any other provision of Chapter 44, is subject to a fine of not more than $5,000, imprisonment for not more than 5 years, or both). Unlike its predecessor, the 1986 version of § 924(a) did not authorize the imposition of any criminal penalties for violations of Chapter 44 that were neither "knowing" nor "willful." *See id.*[5] In 1988,

---

**4.** This interpretation of § 922(g)(1)'s predecessors was based on the Supreme Court's decision in *United States v. Freed,* 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971), which held that a conviction under a provision of the National Firearms Act making it unlawful for any person ·"to receive or possess a firearm which is not registered to him," 26 U.S.C. § 5861(d) (1964 ed. Supp. V), did not require proof that the defendant knew of the fact that the weapon in question was unregistered. *401 U.S. at 607–10, 91 S.Ct. at 1117–18.* Though *Freed*'s holding was actual-ly quite narrow, most lower courts read it as indicating that all federal firearms offenses that did not contain explicit *mens rea* language were "public welfare" or "regulatory" offenses that carried no *mens rea* requirement other than that the defendant had "knowingly" engaged in the prohibited conduct. *See, e.g., United States v. Schmitt,* 748 F.2d 249, 252· (5th Cir.1984), *cert. denied,* 471 U.S. 1104, 105 S.Ct. 2333, 85 L.Ed.2d 850 (1985); *United States v. Pruner,* 606 F.2d 871, 873–74 (9th·Cir.1979). *See generally* Hardy, *The Firearms Owners' Protection Act: A*

*Historical and Legal Perspective,* 17 Cumb. L.Rev. 585, 586 n. 8, 646–47 & n. 335 (1987). As indicated in note 14, *infra,* the Supreme Court recently has made plain that this was too expansive a reading of *Freed.* .

**5.** The 1986 amendments to § 924 *did ·add* § 924(e)(1), which provides that anyone "who violates section 922(g) of this title and has three previous convictions ... for a violent felony or a serious drug offense" is subject to criminal penalties more severe than those authorized in § 924(a). 18 U.S.C.A. § 924(e)(1) (West Supp. 1994). Because § 924(e)(1) does not contain any explicit *mens rea* language, it could conceivably be read to provide criminal penalties for a narrow class of § 922(g) violations· that are neither "knowing" nor "willful"—those that are committed by persons with three prior convictions for violent felonies or serious drug offenses. *But see United States v. Richards,* 967 F.2d 1189, 1195–96 (8th Cir.1992) (like the basic penalties in § 924(a), the enhanced penalties provided in

Congress again amended § 924(a), this time to increase the term of imprisonment available for "knowing" violations of several provisions of § 922, including § 922(g), to a maximum of 10 years. Pub.L. No. 100–690, § 6462, 102 Stat. 4359, 4374 (currently codified at 18 U.S.C.A. § 924(a)(1) and (2) (West Supp.1994)). Once again, however, Congress failed to make any provision in § 924(a) for the imposition of criminal penalties for violations of Chapter 44, including violations of § 922(g), that were neither "knowing" nor "willful." *See id.*

Against this legislative background, the parties have joined issue here on the following questions: (1) whether Congress's insertion of the "knowingly" language in amended § 924(a) makes proof that the defendant acted "knowingly" an essential element of all substantive offenses to which the § 924(a) penalties apply; and (2) if so, whether this in turn means that a conviction under § 922(g)(1) requires proof beyond a reasonable doubt not only that the defendant "knowingly" engaged in the conduct of shipping, transporting, receiving, or possessing a firearm but also that he did so with the knowledge of the facts (a) that he was a "convicted felon" and (b) that the firearm had travelled in interstate commerce.

A

On the first question, I agree with the majority, *ante*, pp. 605–606, that the insertion of the "knowingly" language in amended § 924(a) makes proof that the defendant acted "knowingly" an essential element of the substantive offenses to which the § 924(a) penalties apply, including the § 922(g)(1) offense.[6] The district court's contrary holding was based on its reasoning that § 924(a) itself does not define any substantive criminal offenses, but simply provides penalties for offenses which are defined elsewhere in

Chapter 44, and that Congress could not have intended its insertion of "knowingly" in such a provision to have any bearing on the *mens rea* requirements for any substantive offense. JA 58–67. Instead, the court thought that Congress had intended the "knowingly" language to mean only that the specific penalties provided in § 924(a) could be imposed upon an individual convicted of a Chapter 44 offense only if the government proved—not beyond a reasonable doubt, but under the lesser preponderance standard applicable to sentencing factors—that he had committed that offense with a "knowing" state of mind. JA 65–66. The district court's reading of the statute has some superficial plausibility, for the *mens rea* elements of a crime are normally set out in the provisions that define the substantive offense itself, not in separate penalty provisions. *See United States v. Sherbondy*, 865 F.2d 996, 1001 (9th Cir.1988). But this could not have been what was intended by Congress here.

First, and most fundamentally, the district court's interpretation of the *mens rea* language in amended § 924(a), when viewed in conjunction with the rest of the statutory scheme, as it must necessarily be, *see McCarthy v. Bronson*, 500 U.S. 136, 139, 111 S.Ct. 1737, 1740, 114 L.Ed.2d 194 (1991), would lead to an incongruous result that cannot have been intended. Section 922 makes it "unlawful" to do a number of different acts involving firearms, but does not itself authorize the imposition of any criminal penalties for those acts. That task is left to § 924(a), which serves as the basic penalty provision for all § 922 offenses, and to § 924(e)(1), § 924(f), and § 924(i)(1), which authorize the imposition of penalties greater than those otherwise available under § 924(a) for certain § 922 offenses.[7] Apart from

---

§ 924(e)(1) are available only upon proof that the defendant acted "knowingly").

**6.** The majority simply accepts this, without extended discussion, essentially on the authority of the Ninth Circuit's decision in *United States v. Sherbondy*, 865 F.2d 996, 1001 (9th Cir.1988). Because the statutory language and legislative history which supports this interpretation also bears heavily on the intended reach of the "knowingly" requirement within the various sub-

stantive offenses to which it applies, I discuss the issue more extensively.

**7.** *See* 18 U.S.C.A. § 924(e)(1) (West Supp.1994) (providing enhanced penalties for violations of § 922(g) committed by persons with three prior convictions for a violent felony or serious drug offense); *id.* § 924(f) (providing that a knowing violation of § 922(p), which makes it unlawful to manufacture, sell, possess, or receive a firearm that cannot be detected in a walk-through metal

these provisions in § 924, no provision in the federal criminal code authorizes the imposition of criminal penalties for violations of § 922. If the district court's interpretation of amended § 924(a) were correct, this would mean that § 922 now defines a certain class of criminal offenses for which no penalty is available: violations of its provisions that do not qualify for the basic § 924(a) penalties, because they were not committed "knowingly" or "willfully," or for the special penalties of § 924(e)(1), § 924(f), or § 924(i)(1), because they were not committed by a person with three prior felony convictions and did not involve a violation of either § 922(p) or § 922(u). The district court's interpretation of amended § 924(a) would thus render portions of § 922's prohibitory language purely hortatory.[8] I do not believe that Congress intended the 1986 amendments to § 924(a) to produce such a result. *See Ball v. United States*, 470 U.S. 856, 861, 105 S.Ct. 1668, 1672, 84 L.Ed.2d 740 (1985) ("Congress does not create criminal offenses having no sentencing component."); *Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 562, 110 S.Ct. 2126, 2133, 109 L.Ed.2d 588 (1990) (expressing "deep reluctance to interpret a statutory provision so as to render superfluous other provisions in the same enactment"); *Ratzlaf v. United States*, — U.S. —, —, 114 S.Ct. 655, 659, 126 L.Ed.2d 615 (1994) (cautioning that courts should "hesitate" to interpret statutes in ways that make some of their language mere "surplusage," especially when the language in question "describe[s] an element of a criminal offense").[9] With all respect for the district court, I do not think we could adopt an interpretation of the statute that produces this odd result when there is a perfectly plausible alternative construction that would avoid it: that the *mens rea* language in amended § 924, which is the only provision in the federal code authorizing imposition of criminal penalties for acts declared unlawful by § 922, was designed to impose *mens rea* requirements upon all of the § 922 offenses. *See Sherbondy*, 865 F.2d at 1001 (characterizing this as "[t]he most plausible interpretation" of amended §§ 922 and 924); *see also United States v. Neville*, 985 F.2d 992, 994–99 (9th Cir.) (declining to adopt proposed construction of federal criminal statute that would produce the "absurd result" of "exempt[ing] from any sanction" certain conduct clearly forbidden by other parts of the same statute, where there was "nothing in the language or history of the statute" to suggest that Congress actually intended this result, and it could be avoided by an alternative construction that was also "consistent with [its] language") (internal quotations omitted), *cert. denied*, — U.S. —, 113 S.Ct. 2425, 124 L.Ed.2d 646 (1993).

In addition, the legislative history of FOPA, to which we may properly resort because the statutory text is ambiguous, *see Ratzlaf*, — U.S. at — – — & n. 18, 114 S.Ct. at 662–63 & n. 18, confirms this view. One of the most oft-voiced criticisms of the Gun Control Act of 1968 was that, as interpreted by the courts, it permitted individuals

---

detector, is subject to the same penalties as those provided in § 924(a) for a willful violation of the same provision); *id.* § 924(i)(1) (providing enhanced penalties for violations of § 922(u), which makes it unlawful to steal a firearm from a licensed dealer).

8. The district court recognized this difficulty with its reading of the statute, *see* JA 59 (conceding that it would mean that "Congress may have enacted [some] crimes for which there are no penalty"), but found it insufficient to overcome its belief that if Congress had wanted to alter the *mens rea* requirements for the substantive offenses defined in § 922, it would have done so by amending § 922 itself, rather than by amending its accompanying penalty provision.

9. In addition, the basic premise of the district court's position—that § 924(a) is purely a penalty provision—is not entirely correct. Section 924(a)(1)(A), which authorizes imposition of the § 924(a) penalties upon anyone who "knowingly makes any false statement or representation with respect to the information required by this chapter to be kept in the records of a person licensed under this chapter or in applying for any license or exemption or relief from disability under the provisions of this chapter," has been consistently interpreted as defining a substantive offense of false statement, separate and apart from the closely related offenses defined in 18 U.S.C. § 922(a)(6) and 18 U.S.C. § 922(m). *See, e.g., United States v. Buck*, 548 F.2d 871, 876–77 (9th Cir.), *cert. denied*, 434 U.S. 890, 98 S.Ct. 263, 54 L.Ed.2d 175 (1977). Indeed, the false statement count in this very indictment was brought under § 924(a)(1)(A).

to be subjected to criminal prosecution for minor, technical violations of provisions that were essentially regulatory, rather than penal, in nature. *See* Hardy, *The Firearms Owners' Protection Act: A Historical and Legal Perspective*, 17 Cumb. L.Rev. 585, 646–47 & n. 337 (1987). Each draft of the legislation that became FOPA—from the initial version first introduced in the 96th Congress to the version that was ultimately passed by the 99th—proposed to correct this problem by inserting either "willfully" or "knowingly" (or both) between "whoever" and "violates" in the general penalty provision in § 924(a).[10] Each of the committee reports prepared in connection with these various drafts of FOPA stated explicitly that the insertion of this language in the § 924(a) penalty provision was designed to make proof of a "willful" or "knowing" state of mind an essential element of all of the substantive offenses to which § 924(a)'s penalties applied. For example,

the report prepared to accompany S. 914 stated that:

Paragraph (1) of Section 104 makes a major change in 18 U.S.C. § 924(a) by requiring for the first time the proof of criminal states of mind with respect to all of the activities proscribed in Chapter 44. Under existing law, ... all violations [of Chapter 44] constitute felonies. While some activities proscribed in Chapter 44 contain[.] a criminal state of mind, many do not. As a result, persons can be subject to prosecution and harsh penalties for what are essentially technical violations of a regulatory scheme. In addition, even where states of mind have been spelled out in Title 18, certain court decisions have created the need for Congress to clarify what type of intent should trigger criminal penalties.

S.Rep. No. 98–583, 98th Cong., 2d Sess. (1984), at 19–20.[11] And the committee report attached by the House to the version of

---

**10.** *See* H.R. 5225, 96th Cong., 1st Sess. § 104(a) (1979); S. 1862, 96th Cong., 1st Sess. § 104(a) (1979); H.R. 3300, 97th Cong., 1st Sess. § 104(a) (1981); S. 1030, 97th Cong., 1st Sess. § 104(a) (1981); H.R. 2420, 98th Cong., 1st Sess. § 104(a) (1983); S. 914, 98th Cong., 1st Sess. § 104(a) (1983); H.R. 945, 99th Cong., 1st Sess. § 104(1) (1985); S. 49, 99th Cong., 1st Sess. § 104(1) (1985); H.R. 4332, 99th Cong., 2d Sess. § 8(2), 132 Cong. Rec. H1673 (daily ed. April 9, 1986); H.R. 4332, 99th Cong., 2d Sess. § 104(a), 132 Cong. Rec. H1756 (daily ed. April 10, 1986).

The first three versions of FOPA would have amended § 924(a) to insert "willfully" before "violates" in the general penalty provision. *See* H.R. 5225, *supra*, § 104(a); S. 1862, *supra*, § 104(a); H.R. 3300, *supra*, § 104(a); H.R. 2420, *supra*, § 104(a); S. 914, *supra*, § 104(a). But the Treasury Department and others objected to this "willfully" language on the ground that it could be interpreted to make intent to violate the law an essential element of all Chapter 44 offenses, which was thought to make it difficult, if not impossible, to successfully prosecute any Chapter 44 case. *See* S.Rep. No. 583, 98th Cong., 2d Sess. (1985) (to accompany S. 914), at 20. To redress this concern, the version of FOPA that was reported out of the Senate Judiciary Committee in the 98th Congress bifurcated § 924(a)'s general penalty clause to make its benefits available for those violations of Chapter 44 that were deemed to be the most serious—including violations of § 922(g)—upon proof that they had been committed "knowingly," while making them available for all other violations of Chapter 44 only upon proof that they had been committed "will-

fully." *See id.* at 20–21. This "knowingly/willfully" dichotomy was carried forward in the version of FOPA that ultimately passed both houses and became law in 1986. *See* H.R. 4332, 99th Cong., 2d Sess. § 104(a), 132 Cong. Rec. H1756 (daily ed. Apr. 10, 1986). *See generally* Hardy, *supra*, at 615–16, 648.

**11.** Similarly, the report prepared to accompany S. 1030 stated that:

[The amendment] inserts the word "willfully" into the general penalty clause contained in 18 U.S.C. 924(a). The purpose is to require that penalties be imposed only for willful violations—those intentionally undertaken in violation of a known legal duty. [citation omitted] Existing law for the most part requires at best a general intent, so that even inadvertent violations, and those made in the best of faith, may be the subject of prosecution. Improper prosecutions under such conditions ... were documented in hearings before the Committee.... This subsection is designed to guarantee against such practices [and] ... to provide enforcing agents, prosecutors and courts with a clear delineation of the type of offenders against whom the law is directed. It removes the tendency of statutes permitting conviction for inadvertent violations to "ease the prosecutor's path to conviction, to strip the defendant of such benefit as he derived at common law from innocence of evil purpose, and to circumscribe the freedom heretofore allowed juries." *Morissette v. United States*, 342 U.S. 246, 263, 72 S.Ct. 240, 249, 96 L.Ed. 288 (1952).

S.Rep. No. 476, 97th Cong., 2d Sess. (1983), at 22.

FOPA that was ultimately enacted also stated that the insertion of the *mens rea* language in § 924(a) was designed to "require proof of a knowing state of mind for the prohibited conduct for the felony violations of the [Gun Control Act]." H.R.Rep. No. 495, 99th Cong., 2d Sess. (1986), *reprinted in* 1986 U.S.C.C.A.N. 1327, 1351 (to accompany an unenacted version of H.R. 4332); *see id.* at 1345 (reprinting memo from Treasury Department which notes that the proposed amendments to § 924(a) "provide[ ] a knowledge or intent element of proof with respect to all [Gun Control Act] offenses, 'knowledge' as to some and 'willfulness' as to others").[12]

This legislative history confirms what logic so strongly suggests: that Congress intended the "knowingly" and "willfully" language in amended § 924(a) to be read as imposing *mens rea* requirements upon all substantive offenses to which the § 924(a) penalties apply. That history is more than sufficient to overcome any implications to the contrary that might otherwise arise from its placement of that language in what is principally a penalty provision, rather than in the provisions defining the underlying substantive offenses. That Congress chose to proceed in this fashion may be thought curious, but it is not unprecedented. *Cf. Ratzlaf,* —— U.S. at ——–——, 114 S.Ct. at 657–59 (interpreting *mens rea* language in similar generic penalty provision as adding *mens rea* requirement to the underlying substantive offenses, which were defined elsewhere in the same statute). Perhaps, as the Ninth Circuit has suggested, Congress chose to amend § 922's penalty provision rather than § 922 itself "simply to avoid having to add 'willful' or 'knowing' into every subsection of section 922." *Sherbondy,* 865 F.2d at 1002. Whatever the ultimate

explanation, I agree that Congress intended the addition of the words "knowingly" and "willfully" in the penalty provisions of amended § 924(a) to be read as laying down *mens rea* requirements for all substantive offenses to which those penalties apply. *Accord United States v. Hooker,* 997 F.2d 67, 72 (5th Cir.1993); *United States v. Collins,* 957 F.2d 72, 74–75 (2d Cir.), *cert. denied,* 504 U.S. 944, 112 S.Ct. 2285, 119 L.Ed.2d 210 (1992); *United States v. Richards,* 967 F.2d 1189, 1195–96 (8th Cir.1992); *Sherbondy,* 865 F.2d at 1001–02.

**B**

The next question, once it has been decided that the "knowingly" language in § 924(a) makes proof that the defendant acted "knowingly" an essential element of the § 922(g)(1) substantive offense is just what exactly does it require the government to prove that the defendant knew? Does it require the government to prove beyond a reasonable doubt not only that the defendant knowingly engaged in the *conduct* proscribed by the statute (here, shipping, transporting, receiving, or possessing a firearm), but also that he did so with knowledge of the *circumstances* that made that conduct a federal crime (here, either or both that he had been previously convicted of a felony and that the firearm had travelled in interstate commerce)? Or does the knowledge requirement run only to the prohibited conduct, so that a conviction under § 922(g)(1) requires proof only that the defendant "knowingly" engaged in the *conduct* of shipping, transporting, receiving, or possessing a firearm, and not that he did so with knowledge either of the fact that he was a convicted felon or that the firearm had travelled in interstate commerce?

12. H.R.Rep. No. 495 was not prepared to accompany the version of H.R. 4332 that was ultimately enacted, but to accompany a rival version of the same bill, which differed in several critical respects from the one that was ultimately enacted. *Compare* 132 Cong. Rec. H1672–74 (daily ed. April 9, 1986) (rival version that was not enacted) *with* 132 Cong. Rec. H1753–57 (daily ed. April 10, 1986) (enacted version). *See* Hardy, *supra,* at 588 & n. 13. Both versions of H.R. 4332, however, would have inserted "knowingly" language in the § 924(a) penalty provision. *See* H.R. 4332, § 8(2), 132 Cong. Rec. H1673 (daily ed. April 9, 1986) (unenacted rival version) (re-

placing "whoever violates" language in § 924(a) with "whoever knowingly engages in conduct that is a violation of"); H.R. 4332, § 104(a)(1), 132 Cong. Rec. H1756 (daily ed. April 10, 1986) (enacted version) (replacing "whoever violates" language in § 924(a) with "whoever ... knowingly violates ... [or] willfully violates" language). H.R.Rep. No. 495's explanation for the rival version's proposed insertion of "knowingly" language in § 924(a) is therefore useful—though of course not dispositive, *see infra* at 24–26 & n. 15—in determining why the enacted version inserted similar language in the same provision. *See Dancy,* 861 F.2d at 81 n. 3.

The language of the statute itself, always our starting point, *Staples v. United States,* —— U.S. ——, ——, 114 S.Ct. 1793, 1797, 128 L.Ed.2d 608 (1994), does not give a plain answer. Although Congress obviously intended "knowingly" to impose a knowledge requirement with respect to *some* of the "black-letter" elements of the § 922(g)(1) offense, *see Liparota v. United States,* 471 U.S. 419, 424, 105 S.Ct. 2084, 2087, 85 L.Ed.2d 434 (1985), the word in context does not plainly indicate which of those elements Congress had in mind, and the language can fairly be read to support either interpretation. We therefore are confronted with facial ambiguity which justifies resort to canons of construction. *See Sherbondy,* 865 F.2d at 1002 (recognizing that meaning of "knowingly" language in amended § 924(a) is "ambiguous," because the statute uses the phrase "knowingly violates" without "specifying the conduct and attendant circumstances to which 'knowingly' attaches").[13]

The interpretive path here is clearly marked. To resolve this particular ambiguity concerning the intended reach of an express (or implied) *mens rea* requirement, we have a powerful primary canon of statutory construction. Long ago established by the Supreme court, essentially in *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952), rigorously applied in the interval in *Liparota v. United States,* 471 U.S. 419, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985) and *United States v. United States Gypsum Co.,* 438 U.S. 422, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978), and most recently reaffirmed in *United States v. X–Citement Video, Inc.,* —— U.S. ——, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994) and *Staples v. United States,* —— U.S. ——, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994), it is the presumption that, unless statutory language or legislative history evinces a contrary intent, a nonspecific *mens rea* requirement was intended by Congress to run to "each of the statutory elements which criminalize otherwise innocent behavior." *X–Citement Video,* —— U.S. at ——, 115 S.Ct. at 469.[14] And where, as here, the specific question has been whether such a requirement runs not only to those elements that define the core *conduct* proscribed but also to any elements that define *circumstances* upon which criminality of the conduct turns, the Supreme Court's answer uniformly has been "yes," both where the statute contains an express but ambiguously stated *mens rea* requirement and even where a general requirement has to be implied. *See Morissette,* 342 U.S. at 271, 72 S.Ct. at 254 (statute making it a crime to "knowingly convert[ ] . . . property of the United States" interpreted, by force of the presumption, to require proof not only that defendant intended to "convert" property but that he knew it was property of the United States); *Liparota,* 471 U.S. at 433, 105 S.Ct. at 2092 (statute making it a crime to "knowingly acquire[ ] . . . or possess[ ] [food stamps] . . . in any manner not authorized by [the statute]" in-

---

13. *See also Liparota,* 471 U.S. at 423–24, 105 S.Ct. at 2087 (word "knowingly" in statute providing that "whoever knowingly . . . acquires . . . [or] possesses [food stamps] in any manner not authorized by [the statute]" can fairly be read either to modify *both* the prohibited conduct of acquiring and possessing food stamps *and* the circumstance that the acquisition or possession was in a manner not authorized by the statute, or to modify *only* the prohibited conduct of acquiring and possessing food stamps); W. LaFave & A. Scott, *Criminal Law* § 27 (1972) (meaning of "knowingly" language in statute that makes it unlawful to "knowingly sell[ ] a security without a permit" is ambiguous, because it is "not at all clear" whether the word "knowingly" is intended to modify "sell[ ]," or "sell[ ] a security," or "sell[ ] a security without a permit").

14. This powerful canon of construction is based on the notion that Congress is "presumed to have legislated against the background of our traditional legal concepts," *United States Gypsum,* 438 U.S. at 437, 98 S.Ct. at 2873, among which is the fundamental concept that "[t]he existence of a *mens rea* is the rule . . ., rather than the exception." *Id.* at 436, 98 S.Ct. at 2873 (internal quotations omitted). *See generally Staples,* —— U.S. at ——, 114 S.Ct. at 1797.

While the presumption does not apply to an uncertain category of "public welfare" or "regulatory" offenses, *see Staples,* —— U.S. at ——––——, 114 S.Ct. at 1797–98 (referencing, *inter alia, United States v. Balint,* 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604 (1922)), *Staples* squarely holds that firearms offenses of the type here in issue are not in that category, notwithstanding any contrary implications that some courts may have drawn, *see* note 3, *supra,* from *United States v. Freed,* 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971). *Staples,* —— U.S. at ——–——, 114 S.Ct. at 1798–1804.

terpreted, by force of the presumption, to require proof not only of intentional acquisition and possession but of knowledge that conduct was "not authorized"); *Staples v. United States,* —— U.S. at ——, 114 S.Ct. at 1804 (statute making it a crime to possess, *inter alia,* an unregistered "machine gun," and containing no express *mens rea* requirement, interpreted, by force of the presumption, implicitly to include a general *mens rea* requirement that included proof that the defendant knew the weapon he possessed was a "machine gun" as defined in the statute); *X–Citement Video,* —— U.S. at —— – ——, 115 S.Ct. at 468–472 (statute making it a crime to "knowingly ... ship[ ] ... any visual depiction [of] ... a minor engaging in sexually explicit conduct", interpreted, by force of the presumption and constitutional concerns, to require proof that defendant-shipper knew that the person depicted was a minor).

As applied by the Supreme Court, this interpretive presumption prevails unless "some indication of congressional intent, express or implied," to the contrary can be found. *See Staples,* —— U.S. at ——, 114 S.Ct. at 1797. And when the Court has sought such a contrary indication, it has not been willing to find it either in congressional silence on the particular element at issue, *see id.,* or in ultimate ambiguity of statutory text or legislative history. *See X–Citement Video,* —— U.S. at —— – ——, 115 S.Ct. at 471–72. And, on the other hand, the Court has found the presumption reinforced where violations of the statute could result in particularly "harsh penalties." *See Staples,* —— U.S. at ——, 114 S.Ct. at 1802 ("up to 10 years' imprisonment"); *X–Citement Video,* —— U.S. at ——, 115 S.Ct. at 469 ("up to 10 years in prison as well as substantial fines and forfeiture").

Applying those principles here, I am satisfied that the presumption should prevail to require proof under § 922(g)(1) that the defendant knew that he had been "convicted of a crime punishable by imprisonment for a term exceeding one year." The text of the statute contains no express or implicit indication that the "knowingly" requirement was *not* intended to apply to this particular element, which surely constitutes a fact or circumstance upon which the criminality of otherwise innocent conduct turns. Neither, as will be discussed, does the legislative history contain any express or implicit indication of such a contrary intent. Finally, the statute(s) here at issue now, under the 1988 amendments to FOPA, expose violators to the same range of potentially harsh sentences—including up to 10 years imprisonment—as did those being construed in *Staples* and *X–Citement Video. See* 18 U.S.C. § 924(a)(2).

Only one of these propositions needs extended discussion: whether the relevant legislative history contains any sufficiently clear indication of an intention by Congress that the "knowingly" requirement should *not* apply to the defendant's "felony" status to overcome the *Morissette* presumption that it *was* intended so to apply.

It is important in making that inquiry to emphasize that it does not proceed as if the interpretive scales were in balance at the outset (as ordinarily they are in legislative history inquiries). As graphically illustrated in the Supreme Court's most recent applications in *Staples* and *X–Citement Video,* the inquiry is specifically one for clear indication of an intent contrary to that presumed. It is not, as ordinarily, a search for intent on a clean slate and as if the ingoing range of choices were of equal weight.[15]

---

15. It is on this aspect of the proper method for determining the intended reach of a non-specific scienter requirement that the majority's approach and mine fundamentally differ. As I read the majority's analysis, it approaches the question of legislative intent as one uninfluenced by the *Morissette* presumption. Indeed, the majority's analysis nowhere acknowledges this presumption's existence as an independent interpretive canon having settled primacy with respect to this particular problem of statutory interpreta-
tion. The nearest the majority opinion comes to acknowledging its existence and force is in its efforts to distinguish the issues presented in *Staples* and *X–Citement Video* from that in this case. *See ante* at 607–608. But the cases are never recognized as merely the most recent applications of the well-settled presumption, and, with all respect, the distinctions attempted to avoid their obvious force seem to me facially ephemeral.

The first thing to be said about the relevant legislative history is that it contains no *express* indication by anyone—individual legislator or committee—that the "knowingly" requirement newly inserted in § 924(a)(2) was *not* intended to apply to a defendant's "felony" status. No one in committee report or in floor debate, or in statements for the record said anything to the effect that "this requirement should be understood to apply only to the actual core conduct proscribed by the various substantive provisions to which § 924(a)(2) applies." If a sufficiently clear indication of such an intent at odds with the ingoing presumption of application to all substantive elements is to be found, it would have to be by implication from relevant portions of the history. I am satisfied that neither can it be found by this means.

Perhaps the best way to demonstrate this negative fact is to start with the portion of legislative history upon which the Government has mainly relied as demonstrating an intent by Congress to confine the scienter requirement to the core conduct elements of § 922(g)(1). That is a passage from the committee report attached to the bill that ultimately became FOPA.

> [Amended § 924(a) ] require[s] proof of a knowing state of mind for the prohibited conduct for the felony violations of the [Gun Control Act]. Case law interpreting the criminal provisions of the Gun Control Act have required that the government prove that the defendant's conduct was knowing, but not that the defendant knew that his conduct was in violation of the law. [citing *Freed* ] It is the Committee's intent that unless otherwise specified, the knowing state of mind shall apply to circumstances and results. This comports with the usual interpretations of the general intent requirements of current law.

H.R.Rep. No. 495, 99th Cong., 2d Sess. 25–26, *reprinted in* 1986 U.S.C.C.A.N. 1327, 1351–52.[16]

The argument is that this passage clearly evinces congressional intent simply to codify pre-FOPA decisional law in which the lower federal courts consistently had interpreted § 922(g)(1)'s predecessor statutes as not requiring knowledge of "felony" status. The passage simply will not bear that weight, however, for two principal reasons.

In the first place, it was not prepared to support the version of FOPA that was actually enacted, but to support a rival version that was *not* enacted—a version which differed from the enacted version in several important respects. *See supra* n. 12. Most critically, the version for which that report was prepared and which was sponsored by members generally hostile to efforts to increase the *mens rea* requirements for Gun Control Act offenses, would have added "knowingly" language that by its terms seemed literally applicable only to the prohibited conduct. *See* H.R. 4332, § 8(2), 132 Cong. Rec. H1673

---

**16.** It was on this passage that the Fifth Circuit relied in holding, in *United States v. Dancy,* 861 F.2d 77, 81 (5th Cir.1988), that the "knowingly" requirement did not apply to the defendant's "felony" status, but only to the core conduct proscribed in § 922(g)(1). *Dancy* is the only other circuit court decision that has directly addressed this issue. As the majority recognizes, *ante* at 606, 607, the "implications" in *United States v. Ramos,* 961 F.2d 1003, 1005 (1st Cir. 1992); *United States v. McNeal,* 900 F.2d 119, 121 (7th Cir.1990); and *United States v. Shunk,* 881 F.2d 917, 921 (10th Cir.1989), of agreement with *Dancy's* holding are just that—background, cursory dicta uttered in cases raising quite different issues. With all respect, I simply disagree with *Dancy's* unelaborated reliance on this cryptic passage as the basis for its holding. The per curiam opinion does not consider the passage in total context of the legislative history and, signifi-

cantly, does not take account of the *Morissette* presumption.

Significantly, at least two other post-FOPA circuit decisions interpreting analogous provisions of § 922 have squarely held, as would I, that § 924(a)(2)'s "knowingly" requirement applies not only to the core conduct proscribed by those provisions but to qualifying facts and circumstances that make the conduct criminal. *See United States v. Hooker,* 997 F.2d 67, 72 (5th Cir.1993) (in prosecution under § 922(k), which proscribes possession or receipt of firearm whose serial number has been removed, or altered, government must prove knowledge of removal or alteration); *United States v. Ballentine,* 4 F.3d 504, 506 (7th Cir.1993) (in prosecution under § 922(g)(2) which proscribes possession, shipping, receiving, etc. of firearm by fugitive from justice, government must prove knowledge of facts that made defendant a fugitive, though not that they made him legally a "fugitive").

(daily ed. April 9, 1986) (unenacted version) (replacing "whoever violates [Chapter 44]" language in then-existing § 924(a) with "whoever *knowingly engages in the conduct that is a violation of [Chapter 44]* ") (emphasis added). By contrast, the version that was ultimately enacted contains the much more ambiguous "whoever ... *knowingly violates* [Chapter 44]" language, H.R. 4332, § 104(a)(1), 132 Cong. Rec. H1756 (daily ed. April 10, 1986) (emphasis added), which obviously could more easily be read to apply a knowledge requirement to all elements of the offense. When considered in total context of the enacting process, then, the cited passage simply loses whatever relevance it may have had had it been prepared to support the version of § 922(g)(1) actually enacted.

In the second place, even if the passage were somehow relevant to the intended meaning of the enacted version of § 922(g)(1), its significance on the point at issue is by no means clear. There is in that same report language strongly suggesting that the knowledge requirement all along was intended to apply to all facts necessary to make the defendant's conduct illegal, as would normally be the case at common law. *See* H.R.Rep. No. 495, *supra,* at 1351–52 & n. 17 ("It is the Committee's intent that unless otherwise specified, *the knowing state of mind shall apply to circumstances and results.*") (emphasis added); *id.* at 1352 n. 18 (equating the term "knowingly" with "the concept of general intent") and n. 21 (defining "general intent" as "intentionally adopt[ing] certain conduct *in circumstances known to [the defendant],* where "*that conduct is forbidden by the law under the circumstances* ") (emphasis added).

Aside from this one passage of legislative history, whose actual relevance and substantive significance even if somehow relevant are demonstrably lacking, there is nothing else in the legislative history from which any specific intent to limit the reach of the "knowingly" requirement in any particular way can be found. The Government cites no such indication, nor does the majority, who indeed claim no such force for the one passage cited.

Rather than pointing to any specific indication in the legislative history, the majority relies (exclusively I think it fair to say) on a counter-presumption always implicit in the legislative process: the presumption that Congress legislates "with knowledge of existing law, and that 'absent a clear manifestation of contrary intent, a newly-enacted or revised statute is presumed to be harmonious with existing law and its judicial construction.'" *Ante* at 605 (quoting *Estate of Wood v. C.I.R.,* 909 F.2d 1155, 1160 (8th Cir.1990)). Applying this presumption, the majority then emphasizes the fact that the pre-FOPA circuit court decisions interpreting "felon-in-possession" predecessors to §§ 922(g)(1) and 924(a)(2) uniformly had held that they did not require proof of knowledge of the defendant's "felon" status. Hence, the argument goes, because the legislative history reveals no "clear manifestation of contrary intent," *that* presumption prevails here.

There is no questioning the existence of this "harmonious-with-judicial-interpretations" presumption, and that it must be reckoned with here. *See, e.g., Holmes v. Securities Investor Protection Corp.,* 503 U.S. 258, 268–69, 112 S.Ct. 1311, 1317–18, 117 L.Ed.2d 532 (1992). Nor can it be questioned that the lower court decisions that had addressed this particular interpretive issue in application of predecessor statutes had indeed uniformly interpreted them in the way asserted. But, the presumption should not prevail here, for the following reasons.

First, its force cannot properly be considered, as does the majority, independently of the *Morissette* presumption. After all, as the Supreme Court has specifically noted, that presumption is itself part of the "law" whose existence Congress is presumed to know when it legislates. *See United States v. Gypsum,* 438 U.S. at 436–37, 98 S.Ct. at 2873–74 (Congress is "presumed to have legislated against the background of our traditional legal concepts" among which is the concept that "[t]he existence of a *mens rea* is the rule rather than the exception") (internal quotations omitted).

How, then, should the two interpretive presumptions operate when, as here, they *may* point in opposite directions? The an-

swer seems plain to me. As earlier indicated, the Supreme Court's application of the common law presumption of an intent to give scienter requirements their broadest possible reach (*i.e.,* to all elements, including criminalizing "facts and circumstances") must be accorded primacy as interpretive guide. On this basis, it should prevail over the counter-presumption of intended "harmony with interpretations of existing statutes" unless the latter is so overwhelmingly indicated in legislative history that it flatly compels acceptance. And that simply cannot be said here.

First off, the enactments at issue here do *not* employ the same or similar language as that which was the subject of the pre-FOPA judicial interpretations on the precise matter at issue. The critical provision we construe contains an express *mens rea* requirement, "knowingly," that was not found in the provisions subject to those earlier interpretations. We might have a clear case for applying the presumption (even over the *Morissette* presumption) had the predecessor statutes also contained a "knowingly" requirement of imprecise reach. But we do not have that.

Furthermore, as has been demonstrated, *see supra* at 606–608, it is clear from the legislative history that the primary motivation for adding *any* express *mens rea* requirements to the FOPA provisions at issue here was to increase the safeguards against convictions for inadvertent, or careless conduct. That is to say, the general legislative intent indisputably was to move in the direction of extending rather than retracting or leaving in place existing *mens rea* requirements as judicially interpreted. That general congressional purpose clearly is more in line with the broad-reach *Morissette* presumption than with the contrary presumption to which the majority gives primacy.

In summary, I simply do not see any principled basis for distinguishing between knowledge on the one hand that property converted was that of the United States, or that one's possession of food stamps was unauthorized, or that a gun possessed was a machine gun, or that a person depicted in a film or photograph was a minor, and knowledge on the other hand that one had been convicted of a crime carrying certain punishment. If the common law presumption recognized and rigorously applied in *Morissette* and its progeny compelled the conclusion that a statute's imprecisely expressed (or merely implicit) *mens rea* requirement ran to each of the criminalizing circumstances in the former set, I do not see why it does not compel the same conclusion with respect to the circumstance here at issue. Nothing of which I am aware says that for some reason the presumption does not apply here at all. Nothing intrinsic in the various qualifying circumstances suggests why that might be so. It cannot be because the circumstance of prior conviction is any less one upon which the criminality of otherwise innocent conduct (possession, etc. of a firearm) turns than were those in *Morissette, Liparota, Staples* and *X–Citement Video.* It cannot be because proving knowledge of a prior conviction is inherently more difficult (or less difficult) than proving knowledge of who owned converted property, or whether particular possession was unauthorized, or whether a gun was of a special type, or a person depicted, a minor. The only generic distinction of any kind that I can see between the circumstance here at issue and all the others is that this one pertains to an episode in the defendant's life-history whereas all the others pertain to circumstances related to an object of the crime. This could not be a principled basis for different application of the presumption. *Cf. United States v. Ballentine,* 4 F.3d 504, 506 (7th Cir.1993) (in prosecution under § 922(g)(2) for possession, etc. of a firearm "by fugitive from justice," government must prove defendant's knowledge of facts that create fugitive status).

None of what has been said to this point, however, compels the conclusion that to convict under § 922(g)(1), the government must prove the defendant's knowledge that the firearms had travelled in interstate commerce. The fact of prior conviction is a substantive element of the crime; the fact of interstate travel is jurisdictional only. *See United States v. Yermian,* 468 U.S. 63, 68–74, 104 S.Ct. 2936, 2939–42, 82 L.Ed.2d 53 (1984) (comparable provisions in false-statement statute exists "solely to limit the reach of the . . . statute to matters of federal inter-

est"). Such purely jurisdictional provisions "need not contain the same culpability requirement as other elements of the offense," *id.* at 68, 104 S.Ct. at 2939, so that "the existence of the fact that confers federal jurisdiction need not be one in the mind of the actor at the time he perpetrates the act made criminal by the federal statute", *id.* at 68–69, 104 S.Ct. at 2939 (quoting *United States v. Feola*, 420 U.S. 671, 676–77 n. 9, 95 S.Ct. 1255, 1260 n. 9, 43 L.Ed.2d 541 (1975)). The interstate commerce element in § 922(g)(1) is not therefore a "fact[ ] that make[s] [the defendant's] conduct illegal," *Staples,* —— U.S. at ——, 114 S.Ct. at 1797, for purposes of applying the common law *mens rea* presumption.

## II

Because I would hold that a defendant's knowledge of his prior "felony" conviction is an essential substantive element of the § 922(g)(1) offense, I would of course then hold that the district court's contrary instruction here was a constitutional error. *Yates v. Evatt*, 500 U.S. 391, 111 S.Ct. 1884, 114 L.Ed.2d 432 (1991). That being so, the conviction should be vacated unless the error could be held to be harmless beyond a reasonable doubt. *United States v. Collins*, 957 F.2d 72, 75 (2d Cir.1992).

Under the particular facts of this case, I would find the error to be harmless. The same jury that convicted Langley on the § 922(g)(1) count also found him guilty on a § 924(a)(1)(A) false-statement count based on the same exact sales transaction. The district court specifically instructed the jury that it could convict on the § 924(a)(1)(A) count only if it found, beyond a reasonable doubt, that Langley knew of his prior felony conviction at the time he made the representations in the ATF Form 4473, which he filled out immediately before taking possession of the firearms. Accordingly, the jury's finding of guilt on the § 924(a)(1)(A) count necessarily included a finding that Langley had the knowledge of his prior felony conviction required to support a conviction under the interpretation of § 922(g)(1) that I would adopt. If that finding was supported by the evidence, the § 922(g)(1) conviction must be affirmed despite the error in the instructions

on *mens rea.* *See Collins,* 957 F.2d at 75–77 (though district court erred in instructing jury that it need not find that defendant acted with a certain state of mind in order to convict him of the particular violation of 18 U.S.C. § 922 charged, that error was harmless, because jury's verdict of guilty on another closely-related count necessarily reflected a finding that he had acted with that state-of-mind); *cf. United States v. Minnick*, 949 F.2d 8, 10 (1st Cir.1991) (district court's failure to charge jury that conviction under amended § 922(g)(1) required proof that defendant knew he had been convicted of a crime punishable by imprisonment for a term exceeding one year, even if error, was harmless, because evidence adduced at trial established beyond a reasonable doubt that he did in fact act with such knowledge), *cert. denied*, 503 U.S. 995, 112 S.Ct. 1698, 118 L.Ed.2d 408 (1992). Because I agree with the majority that the evidence was sufficient to convict Langley on the § 924(a)(1)(A) false-statement count with its necessary finding of knowledge of his prior felony conviction, I would affirm his conviction on the § 922(g)(1) count despite the constitutional error in the instruction on that count.

Chief Judge ERVIN, Judge MURNAGHAN and Judge MICHAEL join in this concurring and dissenting opinion.